OPINION OF THE COURT
Leslie E. Stein, J.
Plaintiff commenced the instant action seeking recovery in the amount of $4,036.38, representing an alleged balance due pursuant to a credit card agreement entered into by the parties.
Plaintiff now moves for an order granting summary judgment against defendant, pursuant to CPLR 3212; defendant opposes the motion and cross-moves for an order granting leave to amend his answer to assert a counterclaim and additional affirmative defenses, pursuant to CPLR 3025 (b), and for an order granting summary judgment as against plaintiff.
In determining the motions herein, the court considered the affidavits of plaintiff’s vice-president, Lawrence J. Rupp, plaintiffs memorandum of law, the affidavits of defendant Joseph B. Poland, the affidavit of Andrew F. Capoccia, Esq., defendant’s memorandum of law, and all attached exhibits.
Turning first to defendant’s motion for leave to amend his answer, defendant seeks leave to assert the following affirmative defenses: the subject credit card agreement is unconscionable and, therefore, unenforceable; the agreement fails to comply with the requirements of Personal Property Law §§ 402 and 413; the agreement fails to comply with the provisions of CPLR 4544 and General Obligations Law § 5-702; and the complaint fails to state a cause of action. Defendant also seeks leave to assert a counterclaim based upon plaintiffs failure to comply with the requirements set forth in the Federal Truth in Lending Act (15 USC § 1601 et seq.).
The court notes that “[a]lthough leave to amend a pleading is liberally granted, where * * * the proposed amendment is *572 patently lacking in merit, it will not be permitted and leave should be denied as a matter of law” (McKiernan v McKiernan, 207 AD2d 825 [1994]). Accordingly, in determining defendant’s motion for leave to amend, this court must begin with a consideration of the merits of the proposed amendments themselves.
First, with respect to the proposed defense concerning unconscionability, the court observes that, in Sablosky v Gordon Co. (73 NY2d 133, 138 [1989]), the Court of Appeals held as follows: “The doctrine of unconscionability contains both substantive and procedural aspects, and whether a contract or clause is unconscionable is to be decided by the court against the background of the contract’s commercial setting, purpose and effect * * * Substantively, courts consider whether one or more key terms are unreasonably favorable to one party * * * There is no general test for measuring the reasonableness of a transaction but we have recently provided this guidance: [a]n unconscionable contract [is] one which “is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms.” ’ ” (Citations omitted; emphasis added.)
In the instant case, defendant asserts, generally, that he was an unsophisticated consumer lacking in comparable education to plaintiff’s representatives, who regularly arrange for the extension of consumer credit. The court finds this argument, essentially one of inequality of bargaining power, to be unpersuasive, particularly in view of defendant’s failure to specifically allege any facts concerning the subject transaction which would indicate the existence of any procedural or substantive unconscionability. Similarly, this court finds defendant’s conclusory assertion that the agreement was “confusing” to be insufficient to establish unconscionability.
Defendant also seeks leave to assert a defense concerning plaintiff’s failure to comply with provisions of Personal Property Law §§ 402 and 413. In response, plaintiff argues that Federal law preempts application of the New York Personal Property Law to Federal savings banks such as plaintiff.
In support of its position, plaintiff asserts that, under Federal law (in particular, 12 USC § 1463 [a]; § 1464 [b]), Congress has granted the Office of Thrift Supervision (hereinafter OTS) plenary authority to regulate Federal savings banks. Plaintiff contends that, pursuant to this extremely broad grant of authority, OTS has issued regulations which plainly preempt State laws purporting to regulate the disclosures that must be *573 made as part of an open-ended credit agreement (citing 12 CFR 560.2).
With regard to the issue of Federal preemption, the court first notes that 12 CFR 560.2 (a) provides, in relevant part, as follows: “OTS hereby occupies the entire field of lending regulation for federal savings associations * * * federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section or § 560.110 of this part” (emphasis added).
Illustrative examples of exempted laws are set forth in 12 CFR 560.2 (b), in pertinent part, as follows:
“Except as provided in § 560.110 of this part, the types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding * * *
“(9) [Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants” (emphasis added).
Furthermore, the types of State laws which are not preempted are set forth in 12 CFR 560.2 (c), in relevant part, as follows:
“State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:
“(1) Contract and commercial law;
“(2) Real property law;
“(3) Homestead laws * * *
“(4) Tort law;
“(5) Criminal law; and
“(6) Any other law that OTS, upon review, finds:
“(i) Furthers a vital state interest; and
“(ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.”
Initially, this court observes that the New York Personal Property Law is not included in the list of State laws that are *574 specifically exempt from preemption under 12 CFR 560.2 (c). The court is also unaware of any finding by OTS that the subject sections of the Personal Property Law are exempt from preemption under 12 CFR 560.2 (c) (6). In addition, the court notes that 12 CFR 560.110 concerns certain usury provisions and, accordingly, is inapplicable to the case at bar.
The court further notes that, in its letter opinion dated December 24, 1996 concerning preemption of State laws applicable to credit card transactions, OTS recognized that “OTS and the Bank Board have long taken the position that federal lending laws and regulations are intended to occupy the entire field of lending regulation for federal savings associations, leaving no room for state regulation”. Said letter set forth the following rationale for this position: “[I]nstead of being subject to a hodgepodge of conflicting and overlapping state lending requirements, federal thrifts [should] be free to originate loans under a single set of uniform federal laws and regulations * * * enabling federal thrifts to deliver low-cost credit to the public free from undue regulatory duplication and burden. At the same time, the interests of borrowers are protected by the elaborate network of federal borrower-protection statutes applicable to federal thrifts” (P-96-14, Office of Thrift Supervision [1996] [emphasis added]).
Based upon, the foregoing, this court finds that the provisions of the New York Personal Property Law raised by defendant herein are not exempt from Federal preemption under 12 CFR 560.2 (c) and, therefore, that they are preempted by Federal law and are inapplicable to the instant matter.
However, even if the New York Personal Property Law was not preempted, the court notes that Personal Property Law § 414 (3) provides the following: “Notwithstanding the provisions of this section, any failure to comply with any provision of this article may be corrected within ten days after the holder is notified thereof in writing by the buyer and, if so corrected, neither the seller nor the holder shall be subject to any penalty under this section.”
In his affidavit, Mr. Rupp asserts that, within 10 days of learning of defendant’s contention that plaintiff had not complied with certain sections of the Personal Property Law, plaintiff cured any possible defects in its agreement by sending defendant a revised “Retail Installment Credit Agreement”, as permitted by section 414 (3). Significantly, defendant does not dispute that said correction was made within the time permitted by the aforesaid statute.
*575 Therefore, the court finds that, even if the subject provisions of the Personal Property Law were applicable herein, plaintiff would not be subject to any penalty under Personal Property Law § 414, as it has remedied any potential violations in accordance with the provisions of section 414 (3).
Defendant also seeks leave to assert a defense concerning plaintiffs failure to comply with provisions of CPLR 4544 and General Obligations Law § 5-702. Specifically, defendant asserts that plaintiff’s retail installment credit agreement is inadmissible in any trial of this action, as same fails to comply with the requirements that the type be clear, legible, and the proper size.
Plaintiff argues that the provisions of CPLR 4544 and General Obligations Law § 5-702 are also preempted to the extent that they purport to regulate the disclosures which a Federal savings bank, such as plaintiff, is required to make.
CPLR 4544 provides, in relevant part, the following: “The portion of any printed contract or agreement involving a consumer transaction * * * where the print is not clear and legible or is less than eight points in depth or five and one-half points in depth for upper case type may not be received in evidence in any trial, hearing or proceeding on behalf of the party who printed or prepared such contract or agreement, or who caused said agreement or contract to be printed or prepared”.
Furthermore, General Obligations Law § 5-702 (a) provides, in relevant part, the following:
“Every written agreement * * * to which a consumer is a party and the money, property or service which is the subject of the transaction is primarily for personal, family or household purposes must be:
“1. Written in a clear and coherent manner using words with common and every day meanings;
“2. Appropriately divided and captioned by its various sections.”
In this court’s opinion, both CPLR 4544 and General Obligations Law § 5-702 at least arguably fall within the category of “Contract and commercial law” in the list of State laws that may be exempt from Federal preemption under 12 CFR 560.2 (c). Therefore, the issue then presented is whether said provisions “only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a)” of 12 CFR 560.2 (12 CFR 560.2 [c]).
In the aforecited letter decision dated December 24, 1996, OTS examined three Indiana State laws to determine whether *576 they were preempted pursuant to 12 CFR 560.2. In doing so, the OTS recited the preamble to the final rule which described the analytic framework to be used in determining whether a particular State law that affects lending is, or is not, preempted by Federal law. With respect to laws that are not specifically exempt from preemption, that preamble states, in pertinent part, as follows: “the * * * question is whether the law affects lending. If it does, then * * * the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of [the types of State laws not preempted, as described in section 560.2 (c)]. For these purposes, paragraph c’ is intended to he interpreted narrowly.” (Emphasis added.)
In that letter decision, the OTS found that two of the three State laws (one that related to disclosure and one that related to loan-related charges) were preempted. Only the State’s deceptive acts and practices statute, which prohibited misleading statements and practices in loan transactions by a Federal savings association, was determined to be exempt from preemption because the OTS did not intend to preempt State laws “that establish the basic norms that undergird commercial transactions”.
Stated otherwise, the OTS determined that the deceptive acts and practices statute fell within the category of “[cjontract and commercial” law under section 560.2 (c) (1) and that its impact on lending was only incidental to the primary purpose of the statute — the regulation of the ethical practices of all businesses engaged in commerce in the State. Furthermore, there was no indication that the law was “aimed at any state objective in conflict with the safe and sound regulation of federal savings associations * * * or any other federal objective identified in § 560.2 (a)”. Therefore, the OTS concluded that “Indiana’s general prohibition on deception should have no measurable impact on their lending operations”.
In view of the above, this court finds that the provisions of CPLR 4544 concerning a specific type size are inconsistent with the purposes of 12 CFR 560.2 (a), in that same would serve to create a separate set of regulations concerning the type size of credit agreement disclosures, thereby thwarting the goal of 12 CFR 560.2 that there be a uniform set of Federal lending regulations. Therefore, the court finds that CPLR 4544 is not exempt from preemption under 12 CFR 560.2 (c). Furthermore, the court is unaware of any finding by OTS that CPLR 4544 is exempt from preemption under 12 CFR 560.2 (c) (6).
*577 Based upon the foregoing, the court finds that the provisions of CPLR 4544 are preempted by Federal law and are inapplicable to the instant matter. However, once again, even if the provisions of CPLR 4544 were not preempted by Federal law, the court finds that plaintiffs agreement complies with the New York requirement that print be in at least eight-point type. Specifically, the court notes that General Construction Law § 62 provides, in relevant part, as follows: “Whenever a requirement of law relating to size of type is stated in point size, the type size requirement shall be deemed met if the x-height of the type is a minimum of forty-five percent of the specified point size. Each point shall be measured as .351 millimeter. The x-height size shall be measured as it appears on the page. The x-height is the height of the lower case letters, exclusive of ascenders or descenders.” Therefore, the subject agreement would be in compliance if the x-height of the lower case letters, exclusive of ascenders or descenders, is at least 3.6 point.
In his affidavit, Mr. Rupp asserts that he measured the x-height of the lower case letters in an original copy of the subject credit agreement, and that same was 4 point, thereby exceeding the 3.6-point requirement. Significantly, defendant has not disputed this assertion.
With respect to General Obligations Law § 5-702, the court finds that its provisions (concerning general disclosure requirements under Regulation Z [12 CFR part 226]) are consistent with the purposes of 12 CFR 560.2 (a), in that same contains provisions equivalent to those found in 12 CFR 226.5 (a) (1). However, even if the provisions of General Obligations Law § 5-702 are exempt from preemption, this court finds that the subject credit agreement is in compliance therewith.
Regarding defendant’s proposed defense that the complaint fails to state a cause of action, the court finds that plaintiffs verified complaint clearly states a cause of action for monies due and owing pursuant to the terms of a credit card agreement entered into by the parties.
Finally, with respect to his request for leave to assert a counterclaim based upon plaintiffs alleged violations of the Federal Truth in Lending Act, defendant first asserts that the subject credit card agreement fails to comply with 12 CFR 226.6 (a), in that it fails to satisfy the requirement that the terms of the loan be stated “clearly, conspicuously, and in meaningful sequence”. In his memorandum of law, defendant cites several sections of the agreement in support of said assertion.
*578 Initially, the court notes that defendant cites an outdated and incorrect version of the CFR. The court further observes that the sections of the credit agreement cited by defendant are incomplete and, therefore, do not constitute an accurate representation of the content and sequence of the terms as they appear in the actual agreement. However, upon review of the provisions of a copy of the actual agreement, the court finds that they satisfy the requirements of 12 CFR 226.5 (the applicable section concerning clarity and conspicuousness of terms).
Defendant also argues that the subject agreement violates the Federal Truth in Lending Act, in that it discloses certain numerical terms in a type other than the required 10-point type (citing Mars v Spartanburg Chrysler Plymouth, 713 F2d 65 [1983]).
However, this court notes that the Mars case (supra) involved an interpretation of Regulation Z that was superceded by amendments in 1980 and 1981 (supra, at 66, n 1). Significantly, in 12 CFR 226.5, Official Staff Interpretations (12 CFR part 226, Supp I, References), it was recognized that one of the 1981 changes was that “ftjype size requirements have been deleted” (emphasis added). Furthermore, those interpretations stated that “[t]he ‘clear and conspicuous’ standard requires that disclosures be in a reasonably understandable form” and that “[i]t does not require that disclosures be segregated from other material or located in any particular place on the disclosure statement, or that numerical amounts or percentages be in any particular type size” (12 CFR 226.5, Official Staff Interpretations [12 CFR part 226, Supp I] íf 5 [a] [1] [1] [emphasis added]).
Based upon the foregoing, this court concludes that all of defendant’s proposed defenses and counterclaims are without merit. Accordingly, defendant’s motion to amend his answer is hereby denied.
Turning now to the cross motions for summary judgment, this court notes that, in Zuckerman v City of New York (49 NY2d 557, 562), the Court of Appeals, citing its previous decision in Friends of Animals v Associated Fur Mfrs. (46 NY2d 1065, 1067-1068), stated the following: “ ‘To obtain summary judgment it is necessary that the movant establish his cause of action or defense “sufficiently to warrant the court as a matter of law in directing judgment” in his favor (CPLR 3212, subd [b]), and he must do so by tender of evidentiary proof in admissible form. On the other hand, to defeat a motion for summary *579 judgment the opposing party must “show facts sufficient to require a trial of any issue of fact” (CPLR 3212, subd [b]).’ ”
In sum, upon review of the papers submitted and relevant legal authority as set forth above, this court finds that defendant has failed to present any proof of an evidentiary nature demonstrating the existence of an issue of material and triable fact which would prevent the issuance of summary judgment in plaintiffs favor, while plaintiff has set forth facts sufficient to establish its cause of action as a matter of law. Accordingly, the court concludes that the requirements for issuance of summary judgment set forth in CPLR 3212 have been satisfied by plaintiff. Therefore, the court hereby denies defendant’s motion for summary judgment and grants plaintiff judgment against defendant in the amount of $4,036.38, with interest from September 19, 1997, plus costs and disbursements to be taxed by the Clerk.
Finally, while the terms of the parties’ contract provide for recovery of attorneys’ fees, the court finds that plaintiff has failed to present sufficient proof relative to same. Accordingly, plaintiffs request for attorneys’ fees is hereby denied.